UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AHN VO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-CV-0064-CVE-FHM |
| ) | |
| NISSAN NORTH AMERICA, INC., a foreign ) | |
| corporation; NISSAN MOTOR COMPANY, ) | |
| LTD., a foreign corporation, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is Defendants' Motion in Limine to Exclude the Testimony of Plaintiff's Expert, Ronald Elwell (Dkt. # 19) and Defendants' Motion in Limine to Exclude Plaintiff's Animation and Crash Test Video (Dkt. # 20). Defendants move to exclude plaintiff's proposed fire and design expert, as well as a computer generated animation created by plaintiff's expert, Robert Swint,[1] purporting to demonstrate the course of the events on June 21, 2001.

**I**

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[1] The Court previously ruled that Swint could not testify to his opinion that plaintiff acted reasonably, as such an opinion invades the province of the jury. Hearing of December 12, 2005.

Fed. R. Evid. 702. Rule 702 both empowers and requires the trial court to act as a gatekeeper for proposed expert testimony. See Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001). The rule directs the trial court to assess, first, whether a proposed expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. Id. If the court finds the expert qualified, it must then determine whether the opinions offered by the expert are reliable under the principles laid out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

The Daubert reliability inquiry demands that a proposed expert's testimony be anchored in the knowledge and experience of the discipline of the proffered witness.[2] Id. at 597. The Daubert Court outlined four factors appropriate for a district court's consideration in assessing the admissibility of expert testimony: (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance." Id. at 593-94. District courts are not confined to those factors, however, and may consider others when appropriate. See, e.g., Kumho Tire Co. Ltd., v. Carmichael, 526 U.S. 137, 150 (1999) ("Daubert makes clear that the factors it mentions do not constitute a definitive checklist or test.") (internal quotations marks omitted); Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1233 (10th Cir. 2004) ("[T]his list is neither definitive nor exhaustive and . . . a trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability.").

---

[2]   The Daubert framework also requires a showing of relevance. The relevance of the proposed testimony in this case is not at issue.

## II.

Defendants challenge both Elwell's qualifications to testify as an expert in this matter as well as the methodology utilized by Elwell in developing his opinions in this case. Elwell's expert report opines that the initial direct cause of the June 21 fire in plaintiff's 1996 Nissan Pathfinder was fuel leakage. Elwell contends that the connection of the rubber hoses with screw connectors created the potential for the screws to be either overtightened or undertightened, both conditions which may create a propensity to leak gasoline. Elwell further argues that the absence of what he refers to as a "firewall" allowed the passage of flames from the engine compartment to the passenger compartment of the vehicle.

In reaching his conclusions, Elwell testified, he utilized the same protocol to which he has adhered for forty years: categorizing the accident; considering the so-called "fire triangle" (fuel, oxygen, and ignition source) to determine whether the elements necessary for ignition were present; reviewing any existing field accident reports and eyewitness testimony; and considering both human factors, including an evaluation of the burn patterns on the victim, and highway factors. Elwell admits he conducted no independent testing of his claims, but relies upon the simulation video created by defense expert, Ralph Newell.

The Court concludes, first, that Elwell is qualified to testify. He possesses a bachelor of science degree in mechanical engineering and, in addition to a lengthy engineering career in the automotive industry, he was, for sixteen years, a staff analysis engineer responsible for the analysis of post-accident fires involving General Motors vehicles.

Having found Elwell qualified to testify, the Court must still evaluate the reliability of the methods he used in formulating his causation opinions in this case. In addition to adhering to his

established procedure in evaluating the cause of automobile fires, Elwell conducted an extensive evaluation of the subject vehicle and based upon that evaluation developed a theory of the cause of the June 21 fire. Having reviewed the methods and results of the simulation video constructed by defense expert Newell, Elwell found validation of his causation theory. Defense expert Newell conceded during the Daubert hearing that Elwell, in reaching his conclusions, had complied with the method laid out National Fire Protection Association's Guide for Fire and Explosive Investigations, Document 921. That guide requires the collection of data, analysis of data, development of a hypothesis, testing of that hypothesis, and selection of a final hypothesis based upon that testing.

Whatever defendants' view of the accuracy of Elwell's final hypothesis, he possesses the necessary expertise and has followed a sufficiently reliable procedure in reaching his conclusion to warrant admission under Daubert. Resolving questions regarding the accuracy of Elwell's hypotheis is the responsibility of the jury. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Although Elwell may testify as an expert in this matter, he is hereby prohibited from offering testimony on the following: (1) subsequent remedial measures taken by Nissan to correct any alleged defect; (2) his relationship with General Motors, the deterioration of that relationship, or his views on the propriety of the actions of General Motors that have no relevance to this case; (3) any personal, negative views he has of defendants or unfounded allegations regarding defendants' actions; (4) any negative views or comments regarding the automotive industry or individual manufacturers other than Nissan; (5) documents that purportedly support his expert opinions, but

are not in evidence and are not available to either party for whatever reason; and (6) alleged defects in the door latch mechanism on the 1996 Nissan Pathfinder.[3] Plaintiff is reminded that Elwell may testify as an impartial expert on the cause of the June 21 accident, not as an advocate. A failure to abide by these proscriptions will result in, at the very least, limiting instructions to the jury concerning Elwell's testimony.

### III.

Defendants also seek to exclude the computer generated animation prepared by Swint purporting to recreate the occurrence. Swift testified that he relied upon a survey of the physical aspects of the crash site, the testimony of plaintiff, and the opinion of Elwell as to the cause and origin of the fire in constructing the animation. He conceded that his video is not the product of any independent testing or scientific modeling on his part, and that it reflects plaintiff's versions of the events of June 21, 2001. Since plaintiff has failed to make a showing that Swint engaged in an impartial examination of the evidence to develop the animation, his animation may not be prensented as evidence of expert opinion in this matter.[4]

Plaintiff may, if he wishes, utilize Swint's video as a demonstrative exhibit for the purposes of providing the jury with a visual representation of the plaintiff's view of the cause of the fire. If plaintiff so chooses, this Court will give a limiting instruction stating that the video does not

---

[3] To serve as a guide for admission of Elwell's testimony, the Court attaches hereto an annotated version of Elwell's final report delineating those areas of appropriate and inappropriate testimony.

[4] As the Court has ruled that Swint may not testify as to the reasonableness of plaintiff's actions and that the video is not admissible in evidence, it is unclear what, if any, opinions Swift may offer. If plaintiff intends to call Swint as an expert witness at trial, the Court will conduct a hearing outside the presence of the jury as to the admissibility of his proposed testimony.

5

constitute evidence and is not offered as a representation of the actual event, but is, instead, merely a demonstration of plaintiff's account of the accident.

### IV.

**IT IS THEREFORE ORDERED** that defendants' motion in limine to exclude the testimony of plaintiff's expert Robert Elwell (Dkt. # 19) is hereby **granted in part** and **denied in part** as outlined above. Defendants' motion to exclude plaintiff's animation and crash test video (Dkt. # 20) is, likewise, **granted in part** and **denied in part**.

**DATED** this 1st day of February, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT